UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LESLY ANGIBEAU, | : | |
| | : | NO. 3:03cv2070 (MRK) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MARK DEAL, DAVID BALNIS and DAVID TERNE, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**Memorandum of Decision**

This case arises out of the protracted and unpleasant separation and divorce proceedings of Plaintiff, Lesly Angibeau, and his former wife, Mary Helen Levine.  During the course of those proceedings, domestic disputes developed between Mr. Angibeau and Ms. Levine and the Waterbury police department was called upon to intercede.  In this lawsuit, Mr. Angibeau claims that the Waterbury police violated his rights under the Equal Protection Clause of the Fourteenth Amendment by treating him differently than they treated Ms. Levine.  Currently pending before the Court is Defendants' Motion for Summary Judgment [doc. #41].   For the reasons that follow, the Court GRANTS Defendants' Motion for Summary Judgment.

**I.**

The Court has previously set forth the standards governing a summary judgment motion, and the Court will not repeat those principles here.  Instead, the Court refers the parties to its decisions in *Blackhawk Security, Inc., v. Town of Hamden*, 2005 WL 1719918 (D. Conn. July 22, 2005), *Rossi v. West Haven Board of Educ.*, 359 F. Supp. 2d 178 (D. Conn. 2005), and *Merry*

1

*Charters, LLC v. Town of Stonington*, 342 F. Supp. 2d 69 (D. Conn. 2004) and states that in considering Defendants' Motion for Summary Judgment, the Court has applied the standards set forth in those decisions.

## II.

Three incidents in particular form the basis of Mr. Angibeau's Complaint [doc. # 1], although for reasons that will be stated below, only two incidents currently remain in the case. Briefly stated, those incidents are as follows.

In March 2001, Waterbury Police Officer David Terne, a defendant in this action, responded to a phone call about a domestic dispute between Mr. Angibeau and Ms. Levine, who was then his wife. According to Mr. Angibeau's counsel at oral argument, this incident marked the first occasion in which the Waterbury Police Department had contact with Mr. Angibeau and Ms. Levine. After arriving at the family home, Officer Terne interviewed and obtained statements from Mr. Angibeau, Ms. Levine and their 9-year old son. (Defs.' Mot. Summ. J. Ex. A at 38.) The couple's son, who witnessed the events in question, supported his mother's account of what had happened. (Defs.' Mot. Summ. J. Ex. D.) Based upon what he learned from these interviews, Officer Terne arrested Mr. Angibeau, but not Ms. Levine. Plaintiff appeared in Superior Court on the charges and was granted Accelerated Rehabilitation. However, the Superior Court Judge issued a Protective Order against Mr. Angibeau and required him to attend family education programs, continue with mental health treatment, and perform 100 hours of community service. (Pls.' Rule 56(a) Statement ¶¶ 12, 13.) Other than this March 2001 incident, Officer Terne had no further involvement with Mr. Angibeau. (Defs.' Mot. Summ. J. Ex. A at 101.)

The second incident occurred in May 2001, when Ms. Levine discovered in the former marital home boxes belonging to Mr. Angibeau that contained intimate photographs and videos from their marriage, as well as tape-recordings that he had made of Ms. Levine's telephone conversations without her knowledge or consent. (Pls.' Rule 56(a) Statement ¶¶ 22-28.)  When Mr. Angibeau returned home, Ms. Levine called the police. Responding to Ms. Levine's call, Officer Tirado, who is not a defendant, took possession of the audio tapes. These tapes later became the basis for an arrest warrant against Mr. Angibeau for eavesdropping. The application for an arrest warrant was authored by Officer David Balnis, who is a defendant in this action and who investigated the matter for the police department.  Both the State's Attorney and a Superior Court Judge approved the arrest warrant before it was issued and executed.  The Superior Court once again issued a Protective Order against Mr. Angibeau and gave him Accelerated Rehabilitation for two years with 100 hours of community service.  (Pls.' Rule 56(a) Statement ¶¶ 38, 39.) Other than this May 2001 incident, Mr. Angibeau had no further involvement with Officer Balnis. (Pls.' Rule 56(a) Statement ¶ 41.)

The third incident recounted in the Complaint occurred on December 2001.  Mr. Angibeau reported to the Waterbury Police Department that Ms. Levine had allegedly forged his name on three checks.  Mr. Angibeau later brought the checks in question to the police station, and because the responsible officer was not present at the time, Mr. Angibeau left the checks in the custody of Lieutenant Mark Deal. (Pls.' Rule 56(a) Statement ¶¶ 42 - 44.) Unfortunately, however, the original checks disappeared. (Pls.' Rule 56(a) Statement ¶ 45.) Nonetheless, after some delay, the police obtained copies of the checks and continued with their investigation of

3

Ms. Levine.  Ultimately, that investigation culminated in the police department applying for an arrest warrant for Ms. Levine on the charges leveled by Mr. Angibeau.  However, the State's Attorney declined to seek an arrest warrant, and as a consequence, the matter was dropped. (Pls.' Rule 56(a) Statement ¶¶ 46, 47.)  Plaintiff's attorney acknowledged at oral argument that he has no knowledge of why the State's Attorney refused to seek an arrest warrant in this matter.

### III.

Plaintiff brings this action under 42 U.S.C. § 1983 for Defendants' violations of the Equal Protection Clause through allegedly disparate treatment of Mr. Angibeau and Ms. Levine in connection with their domestic disputes.

At oral argument, Mr. Angibieau's counsel clarified several matters.

1. Mr. Angibeau agreed that judgment may enter in favor of Officer Balnis and accordingly, the Court orally granted Officer Balnis' motion for summary judgment.  As a result of this concession, Mr. Angibeau's counsel acknowledged that the second incident, in May 2001, has now dropped out of the case and the Court should not consider it.

2. Despite language in Mr. Angibeau's brief discussing the law governing civil rights conspiracies, his counsel acknowledged at oral argument that there is no claim in Mr. Angibeau's complaint for violation of 42 U.S.C. § 1985, and therefore there is no claim in this case of a civil rights conspiracy.

3. When asked at oral argument whether Mr. Angibeau's Equal Protection claim is founded upon general Fourteenth Amendment selective enforcement principles or is based upon the so-called "Class of One" Equal Protection claim recognized in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), Mr. Angibeau's counsel clarified that his client's claim is founded solely on an *Olech* Class of One theory and that is the only theory of liability that the Court should consider.

As this Court explained in *Blackhawk Security,* 2005 WL 1719918, at * 3-4, the Second Circuit has recently had occasion to refine and restate a plaintiff's burden on an *Olech* Class of One claim.  In *Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir. 2005)*,* the Second Circuit overturned

4

a jury verdict for the plaintiff on an *Olech* claim and ruled that "[the plaintiff] did not, as a matter of law, satisfy the similarly situated requirements of an Equal Protection 'class of one' claim." *Id.* at 101.[1]  The Second Circuit held that "in order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high," and in particular, much higher than is required for the use of comparators in Title VII claims. *Id.* at 104.

According to the Second Circuit, plaintiffs pursuing *Olech* claims must demonstrate that they were treated differently from someone who is " '*prima facie identical in all relevant respects*.' " *Neilson,* 409 F.3d at 104 (emphasis added) (quoting *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)).  The Court of Appeals explained that the reason for demanding this high standard of similarity in *Olech* claims is that the "existence of persons in similar circumstances who received more favorable treatment than the plaintiff is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose ... is all but certain." *Neilson*, 409 F.3d at 105.  In effect, "[t]he similarity and equal protection inquiries are . . . virtually one and the same in . . . a 'class of one' case." *Id*.

Accordingly, the Second Circuit restated the requirements that an *Olech* plaintiff must establish as follows:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in

---

[1] Because neither party in this case had briefed the *Neilson* decision, the Court gave them the opportunity to submit supplemental briefs.  However, both sides opted against any further briefing.

> circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

*Id*.

Based on the undisputed facts of this case and giving Mr. Angibeau the benefit of all reasonable inferences from those facts, the Court concludes that no rational jury could find that Mr. Angibeau has satisfied either prong of the *Neilson* test.

First, as to the March 2001 event involving Officer Terne, two individuals – Ms. Levine and her son – gave the Officer descriptions of Mr. Angibeau's conduct that fully justified his arrest. Indeed, counsel for Mr. Angibeau conceded at oral argument that the police had probable cause for his client's arrest. Mr. Angibeau's real complaint is that Ms. Levine's conduct was equally culpable but did not arrest her. According to Mr. Angibeau, there is no rational basis for the police to have arrested him and not Ms. Levine.

However, there is no record evidence to support Mr. Angibeau's claim. Ms. Levine and Mr. Angibeau were not similarly situated because their son gave a statement to police that supported Ms. Levine's version of events and not Mr. Angibeau's. (Defs.' Mot. Summ. J. Ex. B, D.) Further, Officer Terne acted against a backdrop of male-on-female domestic violence well-known to experienced officers. *See, e.g.*, Conn. Gen. Stat. § 46b-38b (2005) (requiring police officers to make arrests in situations of family violence, as well as providing for the assistance of victims and officer training and education programs). In light of the foregoing, no rational juror could conclude that Mr. Angibeau and Ms. Levine were "prima facie identical in all relevant respects," as required by *Neilson*. *See Blackhawk Security*, 2005 WL 1719918, at *4-5.

Furthermore, there is no evidence in the record that Officer Terne acted irrationally or out of improper motive. Indeed, as conceded by Plaintiff's counsel at oral argument, Officer Terne

6

had no prior or subsequent involvement with either Mr. Angibeau or Ms. Levine. (Defs.' Mot. Summ. J. Ex. A at 101). As discussed above, in view of their son's statement, Officer Terne acted rationally in deciding to arrest Mr. Angibeau and not Ms. Levine. The validity of Mr. Angibeau's arrest was later confirmed by Mr. Angibeau's decision not to challenge the arrest but rather to seek Accelerated Rehabilitation.

Second, as to the third incident – the December 2001 event involving Lieutenant Deal – there is no evidence in the record of any disparate treatment of Mr. Angibeau and Ms. Levine on the part of the Waterbury Police Department. The record does reflect that the police lost or (according to Mr. Angibeau's unsupported claim) destroyed Plaintiff's original checks (Pls.' Rule 56(a) Statement ¶ 45) but the police later obtained copies of the checks, they conducted what appears to have been a thorough investigation of Mr. Angibeau's complaint, and they sought an arrest warrant for Ms. Levine, just as they previously had sought an arrest warrant for Mr. Angibeau when the police believed they had probable cause for an arrest. (Pls.' Rule 56(a) Statement ¶ 46, 47.)

It is true that no warrant was issued against Ms. Levine, while one had been issued against Mr. Angibeau, but that difference in treatment cannot be blamed on Lieutenant Deal or the Waterbury Police Department. Because the police obtained copies of the relevant checks, no evidence supplied by Mr. Angibeau was lacking from the record and the police did prepare an application for an arrest warrant. As Mr. Angibeau's counsel conceded at oral argument, the decision not to obtain an arrest warrant was made by the State's Attorney's Office, not the police, and certainly not Lieutenant Deal. (Pls.' Rule 56(a) Statement ¶ 47.) As counsel also acknowledged at argument, there is no evidence in the record to suggest that police conduct

(either in losing the original checks or delaying the investigation) had anything to do with the State's Attorney's decision not to seek a warrant. In these circumstances, no rational juror could conclude that Lieutenant Deal had violated Mr. Angibeau's Fourteenth Amendment rights.[2]

## IV.

For the foregoing reasons, Defendants' Motion for Summary Judgment **[doc. # 41]** is GRANTED. **The Clerk is directed to enter judgment for each of the defendants and to close this case.**

IT IS SO ORDERED,

/s/       Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **September 1, 2005**.

---

[2] In view of this Court's finding that Mr. Angibeau fails to satisfy the two-prong test for "class of one" claims detailed in *Neilson*, there is no need to discuss Defendants' claim that they are entitled to Qualified Immunity.